# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

James L. Bennett,
     Petitioner,

      vs.                     Case No. 1:09cv622
                                (Bertelsman, J.; Wehrman, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition (Doc. 1); respondent's "Answer/Return Of Writ" with exhibits (Doc. 13); and petitioner's "traverse" in reply to the return of writ (Doc. 22).

## Background

In the petition, petitioner challenges his convictions in two criminal cases, Case Nos. 2003-2143 and 2004-2008, which were tried in the Brown County, Ohio, Court of Common Pleas.

In Case No. 2003-2143, the indictment charged petitioner with ten counts of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(5) and fifty counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b); the victim was identified in the indictment as "C.H." (Doc. 13, Ex. 1). Prior to trial, petitioner's counsel filed a motion to dismiss the indictment on the ground that petitioner had "not been brought to trial within two hundred and seventy days following his arrest, as required by R.C. §§2945.73(B) and 2945.71(C)(2)." (*Id.,* Ex. 2). After a hearing, the motion was denied. (*Id.*, Ex. 3). The matter proceeded to trial before a jury, which found petitioner guilty on all of the rape charges and four of the sexual battery counts. (*Id.,* Ex. 4). In a "Judgment Entry Of Sentence" filed on September 1, 2004, petitioner was

found to be a "sexual predator" and was sentenced to an aggregate prison term of forty-five (45) years, which consisted of consecutive nine-year prison terms for five of the rape offenses.[1]  (*Id.,* Ex. 5).

In Case No. 2004-2008, the indictment charged petitioner with two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) (Count I) and Ohio Rev. Code § 2907.02(A)(1)(c) (Count II); the victim was identified in the indictment as "L.G." (*Id.,* Ex. 6).  Defense counsel in Case No. 2003-2143 also served as petitioner's trial counsel in Case No. 2004-2008.  The matter, however, was tried separately from Case No. 2003-2143. At the close of the trial, the jury found petitioner guilty as charged. (*Id.,* Ex. 7).  In a "Judgment Entry Of Sentence" filed on September 1, 2004, the two rape counts were merged as "allied offenses of similar import," and petitioner was sentenced to a nine (9) year mandatory prison term to be served consecutively to the sentence imposed in Case No. 2003-2143.  (*Id.,* Ex. 8).

With the assistance of new counsel for appeal purposes, petitioner filed a timely consolidated notice of appeal from the trial court's judgment entries in the two cases with the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.,* Ex. 9).  Three assignments of error were raised in the appellate brief filed by counsel on March 23, 2005:

> 1.  The trial court erred in over[r]uling the defendant's motion to dismiss for failure to bring the defendant to trial within the time set forth in Ohio Revised Code Section 2945.71.
>
> 2.  The trial court erred in allowing the defendant to be charged with ten counts of sexual battery and forty [sic] counts of rape in which each count has identi[c]al claims and lacks any specificity.
>
> 3.  The trial court erred in overruling the defendant-appellant's motion for a directed verdict [because the "evidence against the defendant-appellant was insufficient to support a conviction beyond a reasonable doubt and/or the manifest weight of the evidence does not support a conviction beyond a reasonable doubt and therefore the defendant-appellant should have been acquitted of all charges against him."]

---

[1]Petitioner also was sentenced to the following concurrent terms of imprisonment: four (4) years for each sexual battery conviction and nine (9) years for each of the remaining rape convictions.  (*See* Doc. 13, Ex. 5).

2

(*Id.,* Ex. 10).  Nearly seven months later, in October 2005, petitioner filed a *pro se* "addendum," requesting leave to include another claim in support of his speedy trial argument as an additional assignment of error.  (*Id.,* Ex. 12).[2]

On November 8, 2005, the Ohio Court of Appeals overruled the three assignments of error asserted in the brief filed by counsel and affirmed the trial court's judgment; thereafter, in a separate entry filed December 26, 2005, the presiding appellate judge also denied petitioner's *pro se* motion to file the additional assignment of error.  (*Id.,* Exs. 14, 15).[3]

In the direct appeal decision affirming the trial court's judgment, the Ohio Court of Appeals made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[4] based on the evidence presented at trial regarding the circumstances giving rise to the criminal charges and convictions in Case No. 2003-2143:

> The evidence showed that appellant began living with the mother and her two daughters in 1996.  C.H., the younger daughter, was born on March 24, 1990.  At trial, C.H. testified that when she was eight years old, appellant inserted his finger into her vagina and "moved it around."  She stated that this offense took place in the bathroom of their residence on Market Street in Aberdeen, Brown County, Ohio.  She said appellant would engage in this conduct "three to four times a week."  Appellant

---

[2]During the pendency of the direct appeal, petitioner also filed a *pro se* petition for post-conviction relief with the trial court.  (*See* Doc. 13, Ex. 40).  In the petition, which was filed on September 8, 2005, petitioner alleged that he was denied his right under Ohio law to a "fast and speedy trial" and that his trial counsel was ineffective.  (*Id.*).  On November 3, 2005, the trial court denied the petition as untimely.  (*Id.,* Ex. 41).  Respondent states that petitioner did not pursue an appeal from that decision in the Ohio courts.  (*Id.*, Brief, p. 9).

[3]In denying petitioner's *pro se* motion, the court pointed out that petitioner was "represented by counsel and this appeal was submitted to the court for decision on July 20, 2005."  (Doc. 13, Ex. 14).

[4]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  In this case, because petitioner has neither argued nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, such findings are presumed to be correct.

also digitally penetrated C.H. in the downstairs living room of the Market Street residence.

The family moved to a different residence on High Street in Aberdeen, Brown County, Ohio, in 2000. C.H. testified that appellant began performing cunnilingus upon her in addition to the continued digital penetration of her vagina when she was ten years old. C.H. said that these events occurred in the evening in both her bedroom and living room.

After a brief stay in Maysville, Kentucky, the family moved to a residence on Mt. Orab Pike, Georgetown, Brown County, Ohio. C.H. stated that the sexual abuse only occurred in her bedroom at that location.

The family then moved to Eastland Mobile Home Park located in Georgetown, Brown County, Ohio. In that residence, C.H. testified that appellant continued to sexually abuse her, both digitally and by performing cunnilingus upon her, in various locations including the bedroom, living room, and family room. Again, the frequency of these events was three to four times a week until appellant moved out on April 30, 2003.

C.H. provided further testimony recalling a specific date when appellant "put his finger in [her] and his tongue and moved them around." These incidents took place on March 22, 2003, two days before C.H.'s 13th birthday. C.H. also testified to a separate, specific incident during which the appellant inserted a red dildo into her vagina.

The jury returned guilty verdicts on Counts 1-4 (sexual battery, cunnilingus with C.H. between March 24, 2003 and April 30, 2003) and 11-60 (all rape counts that occurred between January 1, 1997 and March 23, 2003). At trial, appellant was found not guilty on one count of sexual battery, cunnilingus after March 24, 2003; and not guilty on all five counts of sexual battery, digital penetration of C.H. after March 24, 2003.

(*Id.,* Ex. 15, pp. 3-4).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court. (*See id.*, Ex. 16). In his memorandum in support of jurisdiction, he alleged the following

propositions of law:

> 1. The use of a nunc pro tunc judgment entry to extend the time in which to initiate trial does not correct the violation of the defendant's constitutional and statutory rights to speedy trial.

> 2. An indictment charging ten counts of sexual battery and forty [sic] counts of rape which did not differentiate between counts, coupled with a bill of particulars and evidence at trial which did not differentiate between the counts[,] violate the Fifth Amendment due process right to notice of charges, where the evidence alleges merely a general pattern rather than sep[a]rate incidents.

> 3. The absence of evidence going to each essential element of each specific charged offense renders a resulting conviction violative of due process of law.

> 4. Where appellate counsel fails to raise significant and obvious issues of constitutional magnitude which hold a reasonable probability of success on appeal, such counsel is ineffective within the meaning of the Sixth and Fourteenth Amendments.

> 5. Where trial counsel fails to make proper objections to unconstitutional procedures, raising questions about the preservation of the issues for appeal, such counsel is ineffective within the meaning of the Sixth and Fourteenth Amendments.

> 6. Any fact that increases the penalty for a crime above the statutorily prescribed maximum must be found by a jury or admitted by the defendant.

(*Id.*, Ex. 17).

The Ohio Supreme Court accepted the appeal for consideration of petitioner's sixth proposition of law, reversed the court of appeals' judgment, and remanded the matter to the trial court "for resentencing consistent with *State v. Foster*, [845 N.E.2d 470 (Ohio), *cert. denied*, 549 U.S. 979 (2006)]." (*Id.*, Ex. 18).[5]

---

[5]In the meantime, on March 24, 2006, while his appeal was pending before the Ohio Supreme Court, petitioner filed a *pro se* application under Ohio R. App. P. 26(B) with the Ohio

5

On December 27, 2006, the trial court resentenced petitioner to the same terms of imprisonment that were originally imposed in the two criminal cases. (*See id.*, Exs. 23-24). With the assistance of new counsel, petitioner appealed the resentencing decisions to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.*, Ex . 25). He claimed on appeal that (1) "[t]he resentencing court erred by imposing non-minimum, consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution;" and (2) the trial court lacked authority under Ohio law to impose consecutive sentences. (*Id.*, Ex. 26). On March 10, 2008, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 28). Petitioner next pursued a *pro se* appeal to the Ohio Supreme Court, which denied him leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question" on August 6, 2008. (*Id.*, Exs. 29-30, 32).

On April 28, 2008, while his appeal in the resentencing matter was pending before the Ohio Supreme Court, petitioner filed a *pro se* application for reopening of the appeal under Ohio R. App. P. 26(B) with the Ohio Court of Appeals, Twelfth Appellate District. (*Id.*, Ex. 33). In the application, petitioner claimed that counsel who represented him on appeal from the resentencing decisions "was ineffective in failing to argue that the retroactive application of the *Foster* severance remedy violates the 'Separation of Powers Doctrine' and [petitioner's] state and federal constitutional right to due process of law." (*Id.*). On May 27, 2008, the court of appeals denied the application because petitioner failed to establish a "genuine issue as to whether he was deprived of the effective assistance of counsel on appeal;" in so ruling, the court noted that petitioner had "not cited a single Ohio decision to support his position" and that "[r]ather, the greater weight of authority holds that the *Foster* severance remedy does not violate the separation of powers doctrine." (*Id.*, Ex. 35). Petitioner attempted a further appeal to the Ohio Supreme Court, which summarily dismissed the appeal "as not involving any substantial constitutional question" on September 10, 2008. (*Id.*, Exs. 36-37, 39).

---

Court of Appeals, for reopening of the direct appeal. (*See* Doc. 13, Ex. 19). Petitioner alleged in the application that his appellate counsel was ineffective for failing "to raise errors of trial counsel," as well as certain other "significant and obvious issues of constitutional magnitude;" he also alleged the trial court committed errors which deprived him of a fair trial. (*See id.*). On June 14, 2006, the court of appeals denied the application because (1) it was untimely; and (2) petitioner failed to demonstrate "a genuine issue as to whether he was denied the effective assistance of appellate counsel." (*Id.,* Ex. 22). Respondent states that petitioner did not pursue an appeal from that decision to the Ohio Supreme Court. (*Id.,* Brief, p. 6).

Petitioner next commenced the instant federal habeas corpus action in August 2009.  (See Doc. 1).  He alleges nine grounds for relief:

**Ground One:**  The trial court erred in overruling the defendant's motion to dismiss for failure to bring the defendant to trial within the time set forth in Ohio Revised Code §2945.71[, v]iolating his Sixth Amendment right under the federal Constitution to a fast and speedy trial.

**Ground Two:**  The trial court erred in allowing the defendant to be charged with ten counts of sexual battery and forty [sic] counts of rape in which each count has identical claims and lacks any specificity, violating his Fifth Amendment right under the United States Constitution.

**Ground Three:**  The trial court erred in overruling the appellant's motion for a directed verdict, violating his Fifth and Sixth and Fourteenth Amendment[] rights afforded to him under the United States Constitution[, because "the evidence ... was insufficient to support a conviction beyond a reasonable doubt."]

**Ground Four:**  Where appellate counsel fails to raise significant and obvious issues of constitutional magnitude which hold a reasonable probability of success on appeal, such counsel is ineffective within the meaning of the Sixth and Fourteenth Amendments.

**Ground Five:**  Where trial counsel fails to make proper objections to unconstitutional procedures raising questions about the preservation of the issues for appeal, such counsel is ineffective within the meaning of the Sixth and Fourteenth Amendments.

**Ground Six:**  Any fact that increases the penalty for a crime beyond the statutory prescribed maximum must be found by a jury or admitted by the defendant.

**Ground Seven:**  The resentencing court erred by imposing non-m[ini]mum, consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

7

**Ground Eight:**  The trial court did not have the authority to impose consecutive sentences[, v]iolating the appellant[']s due process of law right afforded to him under the United States Constitution.

**Ground Nine:**  Appellant's counsel on appeal [from the resentencing decisions] was ineffective in failing to argue that the retroactive application of the *Foster* severance remedy violates the 'Separation of Powers Doctrine' and his state and federal constitutional right to due process of law.

(*Id.*, pp. 6-A, 8-A, 9-A, 11-A, 11-C, 11-D, 11-E).

## OPINION

### A.  Ground One Is Not Cognizable To The Extent Petitioner Alleges A Violation Of Ohio's Speedy Trial Statute And Lacks Merit To The Extent Petitioner Alleges His Constitutional Speedy Trial Right Was Denied

In Ground One of the petition, petitioner alleges that his federal constitutional right to a speedy trial was violated because he was not brought to trial within 270 days following his arrest, as required by Ohio's speedy trial statute, Ohio Rev. Code § 2945.71.  (Doc. 1, p. 6-A).   Prior to his trial in Case No. 2003-2143, petitioner filed a motion to dismiss the indictment on the ground that he had "not been brought to trial within two hundred and seventy days following his arrest, as required by R.C. §§2945.71(B) and 2945.71(C)(2)."  (Doc. 13, Ex. 2).   The trial court overruled the motion to dismiss, and petitioner challenged that ruling on direct appeal to both the Ohio Court of Appeals and Ohio Supreme Court.  (*See id.,* Exs. 10, 17).

The Ohio Court of Appeals was the last state court to issue a reasoned decision addressing the merits of petitioner's speedy trial claim; the court made findings of fact, which are presumed correct,[6] and ruled in relevant part as follows:

In his first assignment of error, appellant argues that he was not tried within the 270-day statutory speedy trial time limit provision provided in R.C. 2945.71.  He also alleges that the trial court's nunc pro tunc entry

---

[6]*See supra* p. 3 n.4.

8

continuing the trial was improper.  We disagree.

The right to a speedy trial is guaranteed to all state criminal defendants by the Sixth and Fourteenth Amendments to the United States Constitution, *Klopfer v. North Carolina* (1967), 386 U.S. 213, ... and by Section 10, Article I of the Ohio Constitution.  When reviewing a speedy trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71....

R.C. 2945.71(C)(2) states that a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest."  Each day an accused is held in jail in lieu of bail shall be counted as three days for computation of time purposes.  R.C. 2945.71(E).  The triple count of days, however, is not applicable when a defendant is being held on multiple charges pending separate trials....  Furthermore, the time within which an accused must be brought to trial may be extended by, among other things, "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."  R.C. 2945.72(E).

After reviewing the record, we find that appellant's speedy trial claim is without merit.  Appellant's trial was originally scheduled to begin on December 11, 2003.  Prior to the scheduled start date, discussions were held in which appellant's trial counsel apparently sought a continuance.  Both the court and appellant's counsel believed a motion to continue was filed that month.  However, no formal request or motion was made or entered on the record.

On January 27, 2004, the trial court issued a nunc pro tunc entry stating that the trial was continued per counsel's request but the motion was "apparently not filed or docketed through inadvertence."  The Ohio Supreme Court [has] stated, "The province of a nunc pro tunc entry is to correct the record of the court in a cause so as to make it set forth an act of the court which, though actually done at a former term thereof, was not entered upon the journal; and it cannot lawfully be employed to amend the record so as to make it show that some act was done at a former term which might or should have been, but was not, then

performed."

We find the nunc pro tunc entry was proper in the case at bar because it only recorded that which both counsel and the trial court believed occurred, namely defense counsel's motion to continue. At appellant's motion to dismiss hearing, his trial counsel expressed his belief that in December 2003, he moved to continue. He explained to the court:

> "I have informed Mr. Bennett that as an officer of the Court I must instruct the Court that it was my belief that, in fact, a Motion to Continue was filed with the Court's Office in the Month of December, 2003.

> We were scheduled for a jury trial on December 11th, 2003. My office staff indicates that the motion and entry was [sic] drafted. And it is her belief that it was, in fact, filed. As the Court is aware, I was on vacation immediately prior to that[.] December 11th would have been the morning I returned home from vacation, and as such, you know, I feel that as an officer of the Court I must grant this information to the Court."

The court, addressing the record's omission of the motion to continue, explained its similar belief that the same had been filed in the following:

> "I am also going to just note, for the record, and I did refer to this in the judgment entry, which I had previously filed in connection with this case, that the December 11th, 2003 jury trial, which was scheduled well within speedy-trial times, was continued at the request of the Defendant's attorney.***

> My Court staff has notes, which they prepare in the ordinary course of business, that, 'This case was set for jury trial December 11 and 12, 2003. Notice was already prepared.' It says, '[Counsel] to talk with his client and get back with us today or first of week regarding the filing of a possible continuance.' I have notes which indicates [sic] where [counsel] was on the time that he was scheduled to

> be out of town, either immediate the proceeding or during the same period as the trial itself, so there was substantial contact by [counsel]."

The court further detailed trial counsel's agreement and belief that the motion was filed. The continuance's omission from the record was only a matter of inadvertence. The nunc pro tunc entry corrected the record to reflect what occurred, appellant's motion to continue. Appellant's December 11, 2003 court date fell well-within the 270-day statutory limit and was continued by trial counsel's own request. The entry did not impermissibly amend the record.

Furthermore, we find that appellant was brought to trial 174 days after his arrest, an amount within the 270-day statutory limit, even assuming for argument's sake that the trial court did not make a nunc pro tunc entry. Appellant was indicted on June 25, 2003, but was not arrested or made available in Ohio until October 3, 2003. On October 6, 2003, appellant moved for discovery and a bill of particulars. Nine days were charged to the state. Appellant's motions for discovery and a bill of particulars, however, were tolling events pursuant to R.C. 2945.72(E).

On November 26, 2003, the state complied with appellant's discovery requests and filed a bill of particulars. The court found, and we agree, that the amount of discovery time was not unreasonable in light of the number of counts involved in the case at bar. Appellant's speedy trial time began to run again at the triple count pace from November 26, 2003 through January 8, 2004. 138 days were charged to the state.

On January 8, 2004, appellant was indicted in Brown County Criminal Case No. 2004-2008 stemming from rape charges in a different case. Because appellant was being held in custody on multiple charges pending separate trials, he was no longer entitled to the triple count provision of R.C. 2945.71(E). Accordingly, the state was charged with single count days from January 8, 2004 through February 13, 2004, the day appellant moved to dismiss the present case based upon the alleged violation of his right to a speedy trial. The additional 36 days raised the total amount of time to 174 days charged to the state. We find the trial court did not err when it denied appellant's motion to dismiss....

11

(Doc. 13, Ex. 15, pp. 4-8) (state case citations omitted).

As an initial matter, respondent contends in the return of writ that petitioner's speedy trial claim is not cognizable in this federal habeas corpus proceeding to the extent petitioner seeks review of state-law issues that were decided against him by the state courts. (Doc. 13, Brief, pp. 12-14). Respondent's argument has merit.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *see also Pulley v. Harris,* 465 U.S. 37, 41 (1984). Moreover, because the state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)), *cert. denied,* 510 U.S. 1073 (1994).

In this case, petitioner's allegations that Ohio's Speedy Trial Act was violated, and that the January 2004 nunc pro tunc tolling entry in Case No. 2003-2143 was improper under applicable Ohio precedents, raise issues of state-law only, which are not cognizable in this federal habeas proceeding. Although the Ohio Court of Appeals referred generally to petitioner's federal constitutional right to a speedy trial in its direct appeal decision, the court relied solely on state statutory requirements and considerations, as well as state case-law, in determining that (1) the nunc pro tunc entry was proper, and (2) petitioner was tried within state statutory speedy-trial limits. (*See* Doc. 13, Ex. 15, pp. 4-8). This Court is bound by the state court's interpretation of and calculations in accordance with Ohio's speedy trial statute, as well as its finding that the nunc pro tunc entry comported with state-law standards. *Cf. Hutchison v. Marshall,* 744 F.2d 44, 45-46 (6th Cir. 1984), *cert. denied,* 469 U.S. 1221 (1985); *see also Norris v. Schotten,* 146 F.3d 314, 328-29 (6th Cir.), *cert. denied,* 525 U.S. 935 (1998).

However, this Court may consider petitioner's claim to the extent petitioner alleges that error of federal constitutional dimension occurred. As respondent also has argued in the return of writ (*see* Doc. 13, Brief, pp. 17-18), it appears petitioner has

waived any such claim because he failed to present the federal issue to the Ohio courts;[7] instead, he argued only that Ohio's speedy trial statute was violated, and that the trial court erred in determining that the statute was tolled for certain periods of time based on the nunc pro tunc entry filed in January 2004. (*See* Doc. 13, Exs. 2, 10, 17). Nevertheless, out of an abundance of caution, because the Ohio Court of Appeals specifically referred to petitioner's federal constitutional right to a speedy trial in addressing the state-law issues raised by petitioner on direct appeal, the Court will also consider petitioner's claim of federal constitutional error.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." As the Ohio Court of Appeals recognized, this constitutionally-guaranteed right to a speedy trial is considered "fundamental" and is applicable to state criminal proceedings through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 226 (1967); *Cain v. Smith,* 686 F.2d 374, 380 (6th Cir. 1982).

The Supreme Court has stated that the Sixth Amendment's speedy trial guarantee is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Marion,* 404 U.S. 307, 320 (1971). Its protections are triggered by either the issuance of "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Id.* They do not extend to the period prior to the issuance of the formal charge or arrest. *Id.* at 321-22 & n.13.

"On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. United States,* 505 U.S. 647, 651 (1992). However, the Supreme Court has recognized the constitutional right to a speedy trial permits some delays; is "necessarily relative" depending on the circumstances of each case; and

---

[7]It is well-settled that a state defendant with a federal constitutional claim must fairly present that claim to the state courts before raising it as a ground for federal habeas corpus relief. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

cannot "be quantified into a specified number of days or months." *Barker v. Wingo,* 407 U.S. 514, 521-23 (1972).

In *Barker,* the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *see also Marion,* 404 U.S. at 320-21; *Cain,* 686 F.2d at 381 (and Supreme Court cases cited therein). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530; *see also Doggett,* 505 U.S. at 651.

"[T]o trigger a speedy trial analysis" under this four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett,* 505 U.S. at 651-52; *Barker,* 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall,* 427 F.3d 1020, 1025-26 (6th Cir. 2005) (quoting *Doggett,* 505 U.S. at 652). Although delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652 n.1; *Maples,* 427 F.3d at 1026, those of a lesser duration are not *per se* excessive. *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (involving six-and-one-half month delay); *see also United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000) (involving five month delay); *Wilcher v. Rose,* 85 F.3d 630 (table), No. 95-3835, 1996 WL 262951, at *1 (6th Cir. May 16, 1996) (unpublished) (involving ten-and-one-half month delay). In calculating the length of the delay, "only those periods of delay attributable to the government or the court are relevant to [the] constitutional claim." *Howard,* 218 F.3d at 564 (citing *Barker,* 407 U.S. at 529, and *White*, 985 F.2d at 275).

In this case, petitioner was indicted in Case No. 2003-2143 in June 2003, but as was pointed out at the hearing on petitioner's motion to dismiss, petitioner fled the the state and was not arrested and brought to Ohio on the charges until October 2003. (*See* Doc. 13, March 18, 2004 Motion to Dismiss Hearing Tr. 5). In light of those circumstances, and as petitioner apparently rightly concedes, petitioner waived any speedy trial right he may have had prior to his arrest in October 2003. Other delays attributable to petitioner occurred after his arrest, including the period from October

14

6 to November 26, 2003, which was tolled as a result of petitioner's demand for discovery and request for bill of particulars, as well as defense counsel's motion filed in December 2003 for continuance of the originally scheduled December 11, 2003 trial date. In any event, even ignoring the post-arrest periods of delay attributable to petitioner, petitioner was brought to trial on April 1, 2004, within six months of his arrest. The six-month passage of time between petitioner's arrest and trial is not presumptively prejudicial. *Cf. White*, 985 F.2d at 275. Furthermore, petitioner has neither argued nor presented any evidence to suggest that the six-month delay actually prejudiced the defense in any way.

Accordingly, in sum, the Court concludes that (1) to the extent petitioner alleges that Ohio's Speedy Trial Act was violated and that the January 2004 nunc pro tunc tolling entry in Case No. 2003-2143 was improper under applicable Ohio precedents, he raises issues of state-law only, which are not cognizable in this federal habeas proceeding; and (2) to the extent petitioner alleges a claim of federal constitutional dimension subject to review in this proceeding, no Sixth Amendment speedy trial violation occurred in this case. Therefore, petitioner is not entitled to relief based on his claim in Ground One that he was denied a speedy trial.

## B. Petitioner Is Not Entitled To Relief Based On The Claims In Grounds Six Through Eight Challenging His Non-Minimum, Consecutive Sentences

In Grounds Six through Eight of the petition, petitioner challenges the trial court's decisions to impose non-minimum, consecutive sentences in the two criminal cases. He essentially alleges in Grounds Six and Seven that (1) under *Blakely v. Washington,* 542 U.S. 296 (2004), his Sixth Amendment jury trial right was violated when the trial court originally sentenced him on September 1, 2004 to non-minimum, consecutive prison terms based on factors that were not found by a jury or admitted by him, in accordance with statutory provisions that the Ohio Supreme Court later determined in *State v. Foster*, 845 N.E.2d 470 (Ohio), *cert. denied,* 549 U.S. 979 (2006), were unconstitutional in light of *Blakely*; and (2) his rights under the Constitution's Ex Post Facto Clause were violated when, upon remand for resentencing under *Foster*, the trial court re-imposed the same prison terms in accordance with the severance remedy adopted in *Foster* for curing the purported constitutional infirmities. (*See* Doc. 1, pp. 11-C, 11-D). In Ground Eight, petitioner additionally claims that the trial court lacked authority under Ohio law to impose consecutive sentences. (*Id.,* p. 11-D; *see also* Doc. 22, p. 14).

Petitioner's claim of a Sixth Amendment *Blakely* violation is moot to the extent petitioner seeks to attack the initial sentences imposed in September 2004, which were reversed by the Ohio Supreme Court under the authority of *Foster*.

In *Foster,* the state supreme court had held that certain provisions of Ohio's sentencing statute were unconstitutional in light of the Supreme Court's decisions in *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005). Specifically, the *Foster* court found "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms;[8] and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See Foster,* 845 N.E.2d at 490-94.

Turning next to the question of what the appropriate remedy should be to bring about compliance with *Blakely*, the *Foster* court adopted the approach taken in *Booker* of severing the *Blakely*-offending statutory provisions and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See id.* at 494-98. Because the *Foster* court held that its decision extended to cases then pending in the Ohio courts on direct review, *see id.* at 499, the state supreme court concluded in the instant case that the *Blakely* claim raised by petitioner as his sixth proposition of law had merit and remanded the matter for resentencing pursuant to *Foster*.

Petitioner also challenges the sentences that were rendered on resentencing in accordance with the Ohio Supreme Court's remand order. Essentially, he contends that, although he successfully argued on direct review that *Foster* invalidated the sentences imposed in September 2004 pursuant to unconstitutional sentencing

---

[8]In 2009, after *Foster* was decided, the Supreme Court held in *Oregon v. Ice*, 129 S.Ct. 711 (2009), that consecutive sentencing decisions do not trigger Sixth Amendment *Blakely* concerns. In light of *Ice*, it appears that the provision in Ohio's pre-*Foster* sentencing statute pertaining to consecutive sentencing determinations would now be found to pass constitutional muster under the Sixth Amendment. *Cf. Hooks v. Sheets,* 603 F.3d 316, 321 (6th Cir. 2010) (citing *Ice*, the Sixth Circuit held that because the petitioner was "*always* subject to consecutive ... sentences in the discretion of the trial court," his resentencing to consecutive prison terms under *Foster* did not raise due process or ex post facto concerns) (emphasis in original).

provisions in effect at that time, he is entitled to receive a sentence under the "old" law because application of the *Foster* severance remedy to him violates *ex post facto* principles.  This argument, if accepted, would result in a Catch-22 situation and is untenable.

In any event, petitioner's contention that application of the *Foster* remedy on his resentencing violated federal constitutional *ex post facto* principles is meritless. The argument, which has been raised in a variety of contexts, has been thoroughly discussed and universally rejected by the federal and state courts in Ohio.  *See, e.g., Sieng v. Wolfe,* No. 2:08cv44, 2010 WL 2232384, at *15 (S.D. Ohio June 2, 2010) (Watson, J.) (unpublished) (and cases cited therein); *Ashley v. Gansheimer,* No. 1:08cv2556, 2010 WL 1924459, at *3-5 (N.D. Ohio May 12, 2010) (O'Malley, J.) (unpublished) (and cases cited therein); *Hatfield v. Warden, Ross Corr. Inst.,* No. 2:08cv1152, 2010 WL 2196282, at *8 (S.D. Ohio May 3, 2010) (unpublished Report & Recommendation) (and cases cited therein), *adopted,* 2010 WL 2196273 (S.D. Ohio May 28, 2010) (Holschuh, J.) (unpublished); *Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, C.J.; Hogan, M.J.) (unpublished) (and cases cited therein), *aff'd,* 603 F.3d 316 (6th Cir. 2010); *see also Wright v. Lazaroff,* 643 F.Supp.2d 971, 979, 1001-05 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.) (and cases cited and quoted therein); *Smith v. Brunsman,* 626 F.Supp.2d 786, 788, 792-95 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.) (noting that "both the federal district courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Kelley v. Brunsman,* 625 F.Supp.2d 586, 594, 605-08 (S.D. Ohio 2009) (Spiegel, S.J.; Hogan, M.J.); *Rettig v. Jefferys,* 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.: Perelman, M.J.) (unpublished); *Mason v. Brunsman,* No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe,* No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper,* No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson,* No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe,* No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D.

Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein).[9]

The same reasoning contained in the numerous decisions unanimously rejecting *ex post facto* challenges to *Foster* applies to the case-at-hand. *Foster* did not change the elements of the offenses that petitioner was convicted of committing, and petitioner faced the same penalty ranges in sentences for those offenses both before *Foster* (when he committed the offenses) and after *Foster*. *Cf. McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished).

Finally, there is no merit to petitioner's claim in Ground Eight that the trial court lacked authority to impose consecutive sentences. The *Foster* court made it clear that the trial court retained full discretion to impose consecutive sentences despite the severance of the statutory provision previously governing the court's consecutive-sentencing determination. *See Foster,* 845 N.E.2d at 494-99. Moreover, to the extent that petitioner further alleges that his resentencing to the same consecutive prison terms as originally imposed was contrary to Ohio law and violated Ohio's Constitution, he raises issues of state-law only, which are not cognizable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

Accordingly, in sum, petitioner is not entitled to habeas relief based on the claims alleged in Grounds Six through Eight of the petition challenging the trial court's sentencing decisions.

## C. Petitioner Is Not Entitled To Relief Based On The Claim In Ground Three Challenging The Sufficiency Of Evidence In Case No. 2003-2143

In Ground Three of the petition, petitioner alleges that the evidence was insufficient to support his convictions. On direct appeal, petitioner only challenged the evidence supporting his convictions in Case No. 2003-2143, for sexual offenses committed against the victim identified as "C.H." (*See* Doc. 13, Ex.10, pp. 12-14; *see also id.,* Ex. 17, p. 5). This Court's review is limited to consideration of the issue as

---

[9]*Cf. Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

it was presented to the state courts.  Therefore, the undersigned will not address the sufficiency of evidence pertaining to the rape convictions in Case No. 2004-2008, which involved another victim identified as "L.G."

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the sufficiency of evidence claim raised by petitioner's counsel on direct appeal.  The court rejected the claim, ruling in relevant part as follows:

> In appellant's third assignment of error, he alleges the trial court erred when it denied his Crim.R. 29 motions....
>
> An appellate court applies the same test in reviewing a denial of a Crim.R. 29 motion for acquittal as reviewing a challenge based on the sufficiency of evidence....  Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence, viewed in a light most favorable to the prosecution, is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt....
>
> Sexual battery is defined in R.C. 2907.03, in pertinent part, as follows:
>
>> "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when ***
>>
>> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
>
> Rape is defined in R.C. 2907.02, in pertinent part, as follows:
>
>> "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender ***, when ***
>>
>> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
>
> In the case at bar, the state demonstrated that C.H. was born on March

24, 1990, and that appellant, in the position of a stepparent or in loco parentis, engaged in a pattern of sexual abuse with her.  C.H. testified that appellant digitally penetrated her vagina three to four times a week in a variety of locations including: the bathroom and living room of the Market Street residence, the bedroom and living room of the High Street residence, the bedroom of the Mt. Orab Pike residence, and the bedroom, living room, and family room of the Eastland residence.

C.H. also testified that when she turned ten, appellant not only continued to digitally penetrate her, but he also performed cunnilingus upon her three to four times a week.  These incidents occurred in the bedroom and living room of the High Street residence, the bedroom of the Mt. Orab Pike residence, the bedroom, living room and family room of the Eastland residence.

C.H. identified a specific incident when appellant used a dildo and penetrated her vagina with it.  She also testified that after her birthday, appellant continued to sexually abuse her multiple times each week until he was finally asked to leave the residence.  We find, in viewing the evidence in the light most favorable to the prosecution, that a rational trier of facts could find each material element of the crimes charged were proven beyond a reasonable doubt.  The court correctly denied appellant's Crim.R. 29 motion.

(*Id.,* Ex. 15, pp. 10-12) (state case citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claim addressed on the merits by the Ohio Court of Appeals is set forth in 28 U.S.C. § 2254(d).  Under that standard, petitioner is not entitled to relief unless the state court's adjudication of the claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942; *see also Thaler v. Haynes,* 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the Supreme] Court.").

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43.  Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

The well-established Supreme Court decision governing the resolution of petitioner's sufficiency of evidence claim is *Jackson v. Virginia,* 443 U.S. 307 (1979). The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970).  When a petitioner raises a sufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

In this case, although the Ohio Court of Appeals cited only Ohio cases, it correctly identified and applied the *Jackson* standard of review in addressing petitioner's sufficiency of evidence claim. (*See* Doc. 13, Ex. 15, p. 10). Upon review of the trial transcript, this Court concludes that the state appellate court's adjudication of the claim involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

A rational juror could infer from undisputed evidence introduced at trial that petitioner, who was the live-in boyfriend of C.H.'s biological grandmother/adoptive mother for most of the seven-year period spanning from 1996 until April 30, 2003, was in the position of "in loco parentis" to C.H. when the charged offenses occurred. Moreover, as the Ohio Court of Appeals reasonably found, C.H.'s testimony at trial chronicling her sexual abuse by petitioner three to four times a week, beginning when she was eight years old and continuing after her 13th birthday on March 24, 2003 until petitioner moved out of her home on April 30, 2003, constituted direct evidence sufficient to establish beyond a reasonable doubt each element of the four sexual battery and fifty rape counts on which petitioner was convicted in Case No. 2003-2143. *Cf. Valentine v. Huffman,* 285 F.Supp.2d 1011, 1023 (N.D. Ohio 2003), *aff'd in part & rev'd in part on other grounds,* 395 F.3d 626 (6th Cir. 2005); *Yaacov v. Hudson,* No. 1:08cv0507, 2010 WL 1751996, at *4 (N.D. Ohio Apr. 30, 2010) (unpublished).

22

Petitioner contends that C.H. was not a credible witness given (1) the "series of inconsistent statements" she made since the time she was first contacted for questioning on a complaint of suspected child sexual abuse that had been reported to the Brown County Department of Job & Family Services; and (2) her "incredible" testimony essentially accusing petitioner of sexually abusing her "an estimated one thousand times." (Doc. 1, p. 9-A; Doc. 13, Ex. 10, pp. 13-14). However, petitioner's contention challenging the veracity of the victim's testimony regarding the number of times she was abused fails to take into account that the charged offenses took place over a period of years spanning from 1998, when the victim was eight years of age, through April 30, 2003. In any event, most importantly, it was the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to ultimately determine the credibility to be accorded C.H.'s trial testimony. *See Jackson,* 443 U.S. at 319.

Viewing all the evidence in the light most favorable to the prosecution, the Court concludes that a rational juror could have believed C.H.'s testimony, and could have reasonably found that, as reflected in the jury's verdicts, petitioner committed four sexual battery offenses involving cunnilingus with C.H. between March 24 and April 30, 2003, as well as the fifty charged rape offenses during the relevant five-year period from 1998 through March 23, 2003.

Accordingly, in sum, petitioner is not entitled to relief based on the claim alleged in Ground Three of the petition challenging the sufficiency of evidence. The Ohio Court of Appeals' adjudication of the claim was neither contrary to nor involved an unreasonable application of the clearly-established standard of review enunciated by the Supreme Court in *Jackson*, and was based on a reasonable determination of the facts in light of the evidence presented at trial.

### D.  Relief Should Be Granted On The Claim In Ground Two Challenging Petitioner's Convictions In Case No. 2003-2143 On Multiple, Undifferentiated Counts; The Claim Is Not Waived Because, As Alleged In Grounds Four And Five, Cause And Prejudice Have Been Demonstrated In This Case

In Ground Two of the petition, petitioner essentially alleges that the multiple, undifferentiated counts of sexual battery and rape in Case No. 2003-2143 violated his due process right to notice of the charges against him and his right under the Double Jeopardy Clause to be free of multiple convictions for the same offense. (Doc. 1, p.

8-A).  Although petitioner did not object to the indictment or bill of particulars before or during the trial proceedings, he raised the claim on direct appeal to both the Ohio Court of Appeals and Ohio Supreme Court.  (*See* Doc. 13, Ex. 10, pp. 9-11; Ex. 17, pp. 4-5).

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the issue raised by petitioner on direct appeal, ruled as follows:

> Appellant asserts that his constitutional right to due process was violated when the state's indictment consisted of ten identical counts of sexual battery and 50 identical counts of rape.  We disagree.

> With respect to the specificity of the indictment, Ohio courts have generally held that in matters involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses cannot always be determined....  Thus unless times or dates are essential elements of the offenses, such specific times and dates need not be set forth in an indictment or bill of particulars....

> The right to be informed of the nature and cause of an accusation provided for by the Sixth Amendment to the United States Constitution requires that a criminal defendant be provided with information concerning all of the elements of the offense charged.  An indictment is sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy. *Hamling v. U.S.* (1974), 418 U.S. 87, 118....  A criminal defendant may request a bill of particulars pursuant to Crim.R. 7(E).  The purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense" thereby providing the accused with a fair and reasonable opportunity to prepare his defense in light of a legally sufficient, but general, indictment....  A bill of particulars may be amended "at any time subject to such conditions as justice requires."  Crim.R. 7(E).

> In the case at bar, we find appellant's indictment stated the essential elements of both the sexual battery and rape charges.  On October 6, 2003, appellant moved for a bill of particulars, and on November 26, 2003, the state complied and provided him with the requested document.

24

...[A]ppellant's trial, although originally scheduled to be held on December 11-12, 2003, began on April 1, 2004. At no point during the intervening four months did appellant raise the issue that he was unaware of the charges against him or that he was unable to prepare a defense because the charges in the indictment and bill of particulars were not specific enough. On the the contrary, appellant's defense strategy centered on the fact that he never engaged in sexual conduct with C.H.

If, as alleged, the bill of particulars was insufficient to clarify the indictment, appellant could easily have requested amendment by the state. His failure to do so precludes him from establishing prejudice.... We find no violation of appellant's due process rights....

(Doc. 13, Ex. 15, pp. 8-10) (state case citations omitted).

As an initial matter, respondent contends in the return of writ that petitioner has waived the claim alleged in Ground Two because he never voiced any concerns about the adequacy of the indictment or bill of particulars to the trial court, and the Ohio Court of Appeals relied on petitioner's procedural default when it overruled the assignment of error asserted on direct appeal. (*Id.,* Brief, pp. 18-23).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state court decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright v. Sykes,* 433 U.S. 72, 86-87 (1977); *see also McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985). Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

25

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (*per curiam*); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001).

An adequate and independent finding of procedural default will preclude habeas corpus review of a federal claim, unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In this case, as respondent has pointed out (*see* Doc. 13, Brief, pp. 20-21), the Ohio Court of Appeals clearly and expressly held that petitioner was precluded from establishing an infringement of his due process rights because he neither raised the issue prior to trial "that he was unaware of the charges against him or that he was unable to prepare a defense because the charges in the indictment and bill of particulars were not specific enough," nor requested an amendment to the bill of particulars under Ohio R. Crim. P. 7(E). (*See id.,* Ex. 15, pp. 9-10). Moreover, as respondent has further argued (*see id.,* Brief, p. 21) (and numerous Ohio cases cited therein), it appears that the procedural bar relied on by the state court in rejecting petitioner's claim of constitutional error was "adequate" or, in other words, involved a "firmly established and regularly followed state practice" at the time that it was applied. *Cf. Keith v. Mitchell,* 455 F.3d 662, 673 (6th Cir. 2006) (citing *Scott v. Mitchell,* 209 F.3d 854, 866 (6th Cir.), *cert. denied,* 531 U.S. 1021 (2000), as "recognizing Ohio's contemporaneous objection rule as an adequate and independent state ground"), *cert. denied,* 549 U.S. 1308 (2007).

Indeed, the Supreme Court has emphasized that rules requiring that non-jurisdictional defenses and objections based on defects in the institution of the

prosecution or in the indictment be raised prior to trial serve "interests far more significant than mere judicial convenience." *Francis v. Henderson,* 425 U.S. 536, 540 (1976).  As the Court explained:

> If [the] time limits [set forth in such a rule] are followed, inquiry into the alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial.  If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialiaze, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult.

*Id.* (quoting *Davis v. United States,* 411 U.S. 233, 241 (1973)).

On the other hand, courts applying the analogous rule set forth in Fed. R. Crim. P. 12 have held that failure to comply with the requisite time limitations will not result in waiver of the claim if the alleged defect is not apparent on the face of the indictment or does not become apparent until the proceedings are underway.  *See, e.g., United States v. Sturdivant,* 244 F.3d 71, 76 (2nd Cir. 2001); *United States v. Williams,* 89 F.3d 165, 167 n.1 (4th Cir. 1996).

In this case, an argument can be made that petitioner's claim challenging the adequacy of the indictment, as clarified by the bill of particulars, did not become apparent until, as was argued on direct appeal, the State had presented its case.  Under this theory, a pretrial objection would have been premature because it was only after the State presented and argued its position in closing to the jury that it became apparent that the prosecution's case was not based on proof of each count as a distinguishable, identifiable offense, but rather on the theory that petitioner had engaged in a "pattern of conduct," which entailed "many more" incidents of sexual abuse than the "arbitrarily picked" number of charged offenses. (*See* Doc. 13, Ex. 10, p. 11 & Case No. 2003-2143 Trial Tr. 233, 238).[10]

---

[10]*Cf. Dorsey v. Banks,* No. 2:09cv486, 2010 WL 2465380, at *14-15 (S.D. Ohio June 11, 2010) (Kemp, M.J.) (unpublished) (petitioner's claim that the "ambiguity in the indictment" created "a very real possibility that the jury convicted him on one of the two [rape] counts which

In any event, petitioner has argued that "cause" exists for his procedural default in the state courts.  Specifically, he contends in Grounds Four and Five of the petition that his trial counsel was ineffective in failing "to preserve the issue of the multiplicitous indictment" by way of pretrial "objections to the unconstitutional nature of the indictment," and that his appellate counsel was ineffective in failing to raise the ineffective assistance of trial counsel claim on direct appeal.  (*See* Doc. 1, p. 11-A).

Ineffective assistance of counsel may constitute cause for a procedural default.  *See, e.g., Murray,* 477 U.S. at 488.  However, in order to establish cause based on this argument, the ineffective assistance of counsel claim itself must not be procedurally-defaulted.  *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey,* 395 F.3d at 679.

Here, the underlying ineffective assistance of trial counsel claim alleged in Ground Five of the petition is procedurally defaulted because it was not raised as an issue on direct appeal to the Ohio Court of Appeals.  Although petitioner asserted the claim as a proposition of law on further appeal to the Ohio Supreme Court, that court lacked jurisdiction to consider issues, other than claims of ineffective assistance of appellate counsel, which had not been raised below.[11]  *See, e.g., Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983); *see also* Ohio

---

had been dismissed by the trial judge," was not barred from review by reason of petitioner's procedural default in failing to object to the indictment before trial), *adopted,* 2010 WL 3825380, at *7 (S.D. Ohio Sept. 28, 2010) (Frost, J.) (unpublished); *but cf. West v. Kelley,* No. 2:09cv93, 2010 WL 2465334, at *7-14 (S.D. Ohio June 14, 2010) (Kemp, M.J.) (unpublished) (because petitioner did not object to and in fact encouraged the amendment to the indictment, which contained six, undifferentiated sexual abuse counts covering a time period that was both before and after the victim's thirteenth birthday, petitioner procedurally defaulted the claim that he was denied adequate notice of the charges and was improperly convicted of six counts of a single offense in violation of the Double Jeopardy Clause), *adopted,* 2010 WL 2663208, at *1 (S.D. Ohio July 1, 2010) (Frost, J.) (unpublished).

[11]To the extent that petitioner also may have presented the ineffective assistance of trial counsel claim in his *pro se* petition for post-conviction relief filed with the trial court in September 2005, as well as in his *pro se* application for reopening of the direct appeal filed with the Ohio Court of Appeals in March 2006, petitioner committed additional procedural defaults by: (1) failing to meet filing requirements that were relied on by the state courts in denying his motions; and (2) failing to pursue appeals from the trial and appellate courts' rulings. (See Doc. 13, Brief, pp. 6, 9 & Exs. 19, 22, 40-41).

Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966).

In contrast, it appears that petitioner's ineffective assistance of appellate counsel claim, which is alleged in Ground Four of the petition, was not procedurally defaulted. The Ohio Supreme Court's decision in *State v. Murnahan,* 584 N.E.2d 1204, 1205 (Ohio 1992) (syllabus, ¶ 2), has been interpreted by the state courts as permitting review of ineffective assistance of appellate counsel claims raised either in an application for reconsideration or reopening of the appeal under Ohio R. App. P. 26(B) *or* in a direct appeal to the Ohio Supreme Court. Indeed, prior to the Ohio Supreme Court's September 2008 decision in *State v. Davis,* 894 N.E.2d 1221 (Ohio 2008), some appellate courts held that *res judicata* applied across-the-board to bar review of ineffective assistance of appellate counsel claims alleged in timely reopening applications, because such claims were or could have been raised to the Ohio Supreme Court on direct review. *See, e.g., State v. Parker,* No. 82687, 2008 WL 192118, at *2 (Ohio Ct. App. 8 Dist. Jan. 23, 2008) (unpublished), *appeal dismissed,* 885 N.E.2d 956 (Ohio 2008); *cf. Jackson v. Warden, Lebanon Corr. Inst.,* No. 1:07cv507, 2009 WL 3210387, at *3 (S.D. Ohio Sept. 30, 2009) (Barrett, J.) (unpublished). The *Davis* court held that although *res judicata* may apply to bar a reopening application alleging claims that were considered on the merits by the Ohio Supreme Court in a discretionary appeal, the doctrine may not be applied in those cases where the Ohio Supreme Court declines to accept the appeal. *Davis,* 894 N.E.2d at 1225-26. In so ruling, the state supreme court implicitly recognized that the two avenues of relief remain available in Ohio for a defendant to seek review of ineffective assistance of appellate counsel claims.

Here, petitioner utilized both avenues of relief. As noted above, *see supra* n.11, he procedurally defaulted claims raised in his reopening application because (1) he failed to comply with the filing deadline, which was relied on by the Ohio Court of Appeals in denying the application as untimely; and (2) he did not pursue an appeal from the application's denial to the Ohio Supreme Court.

However, petitioner also presented the claim in his timely appeal to the Ohio Supreme Court from the appellate court decision affirming his convictions and sentences. (*See* Doc. 13, Ex. 17, p. 6). The state supreme court accepted the appeal for consideration of petitioner's *Blakely* claim, which also had not been raised below and was cited by petitioner as an example of appellate counsel's ineffectiveness. (*See id.* & Ex. 18). The state supreme court's ruling in petitioner's favor on the *Blakely*

issue was conclusory and did not explicitly address the corollary ineffective assistance of appellate counsel allegation or otherwise explain why jurisdiction existed to rule on a matter not raised on direct appeal. Nevertheless, an argument can be made that the state supreme court did consider petitioner's ineffective assistance of appellate counsel claims and found that only one such claim had merit in accepting the appeal on only the *Blakely* matter. In any event, the Court concludes that the ineffective assistance of appellate counsel claim alleged in Ground Four, and argued herein as cause for petitioner's procedural default of both the ineffective assistance of trial counsel claim alleged in Ground Five and the due process claim alleged in Ground Two, was not defaulted and is subject to review on the merits because it was properly raised in the discretionary appeal to the Ohio Supreme Court.

To establish that his trial and appellate attorneys were constitutionally ineffective, petitioner must demonstrate that (1) they made such serious errors they were not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) their allegedly deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, petitioner must show that counsels' representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsels' errors, the trial/appeal outcomes would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the trial/appeal results would "reasonably likely have been different absent the errors." *Id.* at 695.

Petitioner has argued both on appeal to the state courts and in the instant case that the Sixth Circuit's decision in an analogous habeas case–*Valentine v. Konteh*, 395 F.3d 626 (6ᵗʰ Cir. 2005)–governs the disposition of his underlying due process claim alleged in Ground Two. (*See* Doc. 13, Ex. 10, pp. 9-11; Ex. 17, pp. 4-5; Doc. 22, pp. 7-8). He contends herein that *Valentine,* as well as the Supreme Court precedents relied on in that case, mandate a finding that his due process rights were violated and that, therefore, his trial counsel should have flagged the issue at the trial level. He further contends that his appellate counsel, who did raise the *Valentine* issue on direct appeal, was ineffective in not also arguing that trial counsel's failure to object to the adequacy of the indictment or bill of particulars at trial amounted to ineffective assistance; it is petitioner's position that by omitting the additional argument, his appellate counsel failed to ensure that the meritorious due process claim would be considered by the Ohio appellate courts.

The petitioner in *Valentine* was indicted, tried and convicted in Ohio on multiple charges of sexual abuse of his eight-year-old stepdaughter during a specified 322-day period. The indictment contained "20 'carbon-copy' counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded." *Valentine,* 395 F.3d at 628. A bill of particulars was provided, which "did not offer further differentiation among the counts," but "merely restated the allegations and identified the family home as the location of all forty offenses." *Id.* at 629. At trial, the child victim was the only witness who provided testimony regarding the number of assaults committed by the petitioner. Specifically, she stated that the petitioner "forced her to perform fellatio in the family living room on 'about twenty' occasions[,] ... that [he] digitally penetrated her vagina in the family living room on 'about fifteen' occasions," and that "further similar incidents" took place in her bedroom, her siblings' bedroom, and in the master bedroom; the victim also testified that petitioner "achieved anal penetration with his penis on 'about ten' occasions." *Id.*

The jury returned a verdict convicting the petitioner on all forty counts, and he was sentenced to 40 consecutive life terms. *Id.* On direct appeal, the Ohio Court of Appeals overruled petitioner's claim that he was denied due process "when he was allowed to be convicted upon an indictment which did not specify a date or distinguish between conduct on any given date;" the court reasoned that the victim was a "young child who was unable to remember exact dates and times, that there was no evidence that the state had more specific information, and that [petitioner] failed to demonstrate any material detriment to his ability to defend himself resulting from the lack of specificity of the dates listed in the indictment." *See Valentine v. Huffman,* 285 F.Supp.2d 1011, 1018 (N.D. Ohio 2003). However, the state appellate court reversed petitioner's convictions on five of the felonious sexual penetration counts presumably because the victim testified that petitioner had digitally penetrated her vagina "about fifteen," instead of twenty, times. *Valentine,* 395 F.3d 629. Petitioner's remaining convictions and consecutive life sentences on twenty counts of rape and fifteen counts of felonious sexual penetration were affirmed. *Id.*

On federal habeas review, the district court rejected the petitioner's claim challenging the sufficiency of evidence supporting his affirmed convictions, but found that petitioner was entitled to relief based on his claim that "the lack of specificity in the indictment as to dates and conduct resulted in a denial of [his] right to due process of law." *Valentine,* 285 F.Supp.2d at 1022-27. The court held that the Ohio Court of

31

Appeals' decision overruling that assignment of error involved an unreasonable application of clearly established federal law as determined by the Supreme Court in *Russell v. United States,* 369 U.S. 749 (1962). *See Valentine,* 285 F.Supp.2d at 1026-27. As the district court pointed out, in *Russell,* the Supreme Court held that an indictment must (1) contain the elements of the charged offense; (2) provide the defendant with adequate notice of the charges so that he may prepare a defense; and (3) provide protection against double jeopardy. *Russell,* 369 U.S. at 763-64. The district court concluded in *Valentine* that the indictment failed to satisfy *Russell*'s third mandate to the extent that petitioner's indictment and conviction on "20 identical counts of rape and 20 identical counts of felonious sexual penetration, 5 of which were dismissed by the Ohio Court of Appeals," imperiled the petitioner's "ability to invoke the convictions or dismissals for double jeopardy purposes." *Valentine,* 285 F.Supp.2d at 1026.

The State appealed to the Sixth Circuit, which in a 2-1 panel decision, affirmed the district court's determination that the Ohio Court of Appeals had unreasonably applied clearly established federal constitutional law as announced by the Supreme Court in *Russell.* The panel majority held that although the indictment adequately set out the elements of the charged offenses, the "multiple, undifferentiated" counts in the indictment violated not only the petitioner's right to be protected from double jeopardy, but also his right to adequate notice of the charges. *Valentine,* 395 F.3d at 631.

The court began its analysis by pointing out that although the "federal right to a grand jury indictment has never been found to be incorporated against the states," the due process requirements enunciated in *Russell* apply to both federal indictments and state criminal charges. *Id.* (and cases cited therein).

Turning next to the due process notice issue, the Sixth Circuit acknowledged that "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Id.* at 632. The court, however, continued:

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places.... Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. [Petitioner] was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts.

In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by [petitioner] and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to number of incidents was presented.

Given the way [petitioner] was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own.... The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

*Id.* at 632-33.

The majority reasoned further that because "the indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced," he was "prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive instances," against which he had "little ability to defend." *Id.* at 633-34. Recognizing that States have the authority to enact statutes criminalizing a "pattern" or "continuing course" of abuse, the majority emphasized that they "do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over." *Id.* The court explained that under such circumstances, the defendant "could only successfully defend against some of the charges by effectively defending against all of the charges." The court concluded:

The prosecution should not have indicted and tried this as an "all or nothing" case and the trial court should not have permitted such a trial. Defendants must be given adequate notice of all the charges made against them. While [petitioner] had legal and actual notice that he must defend against the child's allegations of sexual abuse over a ten-month period, he was given no notice of the multiple incidents for which he was tried and convicted.

33

*Id.*

The Sixth Circuit further concluded, as had the district court, that the multiple, identically-worded counts in the indictment deprived petitioner of protection against double jeopardy. The court found that (1) "there was insufficient specificity in the indictment or in the trial record to enable [petitioner] to plead convictions or acquittals as a bar to future prosecutions;" and (2) "the undifferentiated counts introduced the very real possibility that [petitioner] would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634-35.

In closing, however, the Sixth Circuit reversed the district court's grant of an unconditional writ of habeas corpus and instead held that the jury's verdicts of guilt on the first rape count and the first felonious sexual penetration count were to remain standing. *Id.* at 637, 639. The court stated:

> Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts. The exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges. The prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

*Id.* at 636-37.

Nevertheless, the court ruled that issuance of an unconditional wirt of habeas corpus was inappropriate because the prosecutor had "presented substantial evidence of ongoing abuse against which the petitioner had notice and opportunity to defend." *Id.* at 637. The court explained that in such circumstances, there was no evidence in the record to suggest that the constitutional errors, which resided "in the multiple identical counts rather than the generic statutory language of the charges or the wide

34

time frame in the indictment," prejudicially impacted the jury's consideration of the first rape count and the first felonious sexual penetration count.  *Id.*

As petitioner has argued herein, the instant case holds many similarities to *Valentine.*   As in *Valentine,* petitioner was charged in Case No. 2003-2143 with multiple, undifferentiated, "carbon-copy" counts of sexual battery and rape. (*See* Doc. 13, Ex. 1).   In contrast to *Valentine*, the bill of particulars did offer some differentiation among the counts to the extent that (1) the ten counts of sexual battery were divided into two categories consisting of five charges of cunnilingus (Counts I-V) and five charges of digital penetration (Counts VI-X), during the specified one-month time period; and (2) the fifty counts of rape were divided into three categories consisting of twenty-nine charges of digital penetration (Counts XI-XL), twenty charges of cunnilingus (Counts XLI-LIX), and one count of penetration "with a reddish pink colored dildo" (Count LX), during the specified six-year period. (*Id.,* Ex. 10, Appendix, pp. xiii-xv).  Moreover, the bill of particulars provided that the charged rape offenses occurred "in the party's various homes in Aberdeen and Georgetown, Ohio." (*Id.*, p. xiv).

Like *Valentine,* the child victim was the only witness to provide testimony regarding the number of assaults committed by petitioner.  She testified generally that the assaults started with digital penetration offenses when she was eight years old; that petitioner also began performing oral sex on her when she was ten years of age; and that the sexual abuse continued on an ongoing basis three to four times a week until petitioner moved out of her home on April 30, 2003. (Case No. 2003-2143 Trial Tr. 30-32, 42-43).  The victim testified that when "these things first happened to her," she bled for three days. (*Id.,* Tr. 33).  She recalled one specific incident on March 22, 2003, two days before her 13th birthday, when the petitioner "put his finger in me and his tongue and moved them around." (*Id.,* Tr. 34).   She also stated that petitioner unsuccessfully tried on one occasion to have vaginal intercourse with her and, on another occasion, used a red dildo to insert in her vagina. (*Id.,* Tr. 32).

On cross-examination, the victim testified further that the sexual abuse began when she was living in a house on Market Street in Aberdeen, Ohio; the first incident took place in the bathroom, and "the other incidents" occurred in the downstairs living room. (*Id.,* Tr. 53, 56).  The victim stated that when the family moved to the next home, a one-story house on High Street in Aberdeen, the sexual abuse continued and took place in the evening in her bedroom and in the living room. (*Id.,* Tr. 69-71).  The abuse continued when the family moved to a home on Mt. Orab Pike in Georgetown,

Ohio, where the incidents occurred in her room only. (*Id.,* Tr. 71-72). Thereafter, when the family moved to the Eastland Mobile Home Park in Georgetown, the incidents took place in her bedroom, the living room and the family room. (*Id.,* Tr . 73). The victim testified that the March 22, 2003 incident took place at the Eastland Mobile Home Park location. (*Id.,* Tr. 75-76).[12]

In closing argument, the prosecutor conceded that the victim's testimony was not very specific as to "dates and times and number of times" and that "[t]he best she can do is say 'three or four times'" per week. (*Id.,* Tr. 242). The prosecutor also acknowledged that there were times in the specified period between January 1997 and March 23, 2003 that petitioner was not living in the victim's home. (*Id.*). Therefore, the prosecutor relied on the argument found to be problematic in *Valentine* that "if you find, beyond a reasonable doubt, that the Defendant has engaged in a pattern of conduct in which he has intermittently committed the offense of rape and/or sexual battery, over a specified period of time, that is sufficient." (*Id.,* Tr. 233). Of particular concern, the prosecutor stated:

> And you and I know, from listening to the testimony, there are periods and times, it probably didn't happen every week, but if it was just over the years from 2001 to 2003, three to four times a week, that's many more than 50. *And, in fact, we arbitrarily picked 50 Counts and 10 Counts. And we don't have to prove to you the exact dates, if you believe there was this pattern of conduct where she was subjected to sexual abuse on an ongoing basis.*

(*Id.,* Tr. 238). Finally, in conclusion, the prosecutor reiterated:

> ....[T]hese things happened to her many more times than we have charged, and that upon that evidence, the State has proven, beyond a reasonable doubt, the 50 counts of Rape and, in fact, more in the 10

---

[12]Testimony was elicited at trial from the victim's biological grandmother/adoptive mother that the family lived in four different homes in Aberdeen and Georgetown during the relevant time period. (Doc. 13, Case No. 2003-2143 Trial Tr. 137-38). Further testimony was elicited that the family moved to the house on Market Street in 1998 and stayed there for approximately two years before moving in 2000 to the next home on High Street; the family moved to Georgetown in 2001, immediately after the victim's sister graduated from high school. (*See id.,* Tr. 125, 166-69).

36

Counts of Sexual Battery after she turned 13....  We've proven through [the victim's] testimony that he digitally penetrated her..  He put his mouth on her and his tongue in her.  And he used a red-pinkish dildo on her.  And that, therefore, the State has proven this case beyond a reasonable doubt.  The dates and the times are not essential elements.  As long as you find that there was ... a conduct where he inherently [sic] raped her and committed sexual battery on her.  And I ask you to return a verdict of guilty on all counts.

(*Id.,* Tr. 243-44).

Even at that point in the trial proceedings, after it was made clear that the State was proceeding on the theory that the evidence establishing a pattern of sexual abuse was all that was needed to demonstrate petitioner's guilt on all of the "arbitrarily picked" charges, petitioner's counsel did not lodge an objection to his prosecution on the numerous, undifferentiated counts of sexual battery and rape.  Instead, although he sought to emphasize the weaknesses in the prosecutor's argument by citing to the prosecutor's statements that "dates, times, places don't matter" and that the sixty criminal charges had been "arbitrarily picked ... out of the air," petitioner's trial counsel essentially contended in closing argument that the alleged pattern of sexual abuse had not been proven because it was based solely on the victim's unsubstantiated and unbelievable claim that over a five-year period, she was sexually abused three to four times a week, or "in excess of 1,000 times."  (*See id.,* Tr. 244-55).

The Court concludes that petitioner's trial counsel provided unreasonable assistance in failing to specifically object at that point to his indictment and prosecution on the sixty charges.  By that time, the district court had issued its decision in *Valentine,* finding that constitutional error had occurred in an analogous case which justified the granting of an unconditional writ of habeas corpus. Moreover, enough corroborating evidence had been presented at trial to support the victim's testimony that she had been sexually abused by the petitioner beginning when she was eight years of age.[13]  In light of the victim's specific recollection of some of

---

[13]Specifically, the victim's mother testified that when the victim was "about eight-years-old," the victim came to her and told her about what petitioner was doing, but that she did not believe the victim at that time.  (Doc. 13, Case No. 2003-2143 Trial Tr. 149).  Around the same time, the victim's mother also noticed that the victim had been bleeding from her vaginal area. (*Id.,* Tr. 149-50).  Although at the time she thought the victim had started her period, the victim

the incidents that had occurred, including one that took place two days before her 13th birthday, it was thus highly likely that the jury would find petitioner had engaged in an ongoing course of abuse over a five-year period.  Therefore, to the extent that counsel may have intentionally opted to argue for an acquittal on all counts under the State's "all or nothing" approach, rather than object to the indictment and obtain a dismissal of counts not sufficiently differentiated in the bill of particulars or by the evidence presented at trial, the choice of trial strategy fell outside the wide range of reasonable professional assistance under the first prong of the *Strickland* test.

In addition, trial counsel's error amounted to ineffective assistance prejudicially affecting the outcome of the trial under the second prong of the *Strickland* test. Petitioner was convicted of the sexual battery offenses charged in the first four counts of the indictment and all fifty charged rape offenses.  However, the first four sexual battery counts are identically-worded and, as clarified in the bill of particulars, all involved the offense of cunnilingus that was not shown at trial to be based on separate, identifiable incidents.  Moreover, although the bill of particulars and evidence presented at trial differentiated between some of the identically-worded, multiple rape counts, the differentiation provided was not adequate to support petitioner's prosecution on all fifty charges of rape.   The undersigned finds that under the Sixth Circuit's decision in *Valentine*, petitioner's prosecution and conviction on the multiple, undifferentiated counts of sexual battery and rape violated petitioner's due process rights to adequate notice of the charges and protection from double jeopardy. Therefore, if petitioner's counsel had objected to petitioner's indictment and prosecution on those counts, it is reasonably likely that petitioner would not have been convicted and sentenced on fifty-four of the sixty counts charged in the indictment.

Finally, petitioner's appellate counsel was ineffective in failing to raise the meritorious ineffective assistance of trial counsel claim, or to even argue "plain error," on direct appeal for the purpose of ensuring that the due process issue decided in *Valentine* would be considered by the Ohio appellate courts.  As discussed above, *see supra* pp. 26-27, it has long been well-settled in Ohio that failure to object to defects in the indictment prior to trial, or to assert a contemporaneous objection when an error

---

did not begin menstruating until nine and one-half years of age.  (*Id.,* Tr. 150).  The victim's mother further testified that when she finally confronted petitioner on April 30, 2003 about the complaint of child sexual abuse that was being investigated and had been confirmed by the victim, the petitioner responded: "Well, what was I supposed to do with her rolling around and throwing her legs around."  (*Id.,* Tr. 143).

occurs during trial, will preclude review of such claims except for "plain error." *See, e.g., State v. Skatzes,* 819 N.E.2d 215, 232 (Ohio 2004) (citing *State v. Frazier,* 652 N.E.2d 1000, 1009 (Ohio 1995), *cert. denied,* 516 U.S. 1095 (1996)) (involving failure to object to the indictment before trial); *State v. Long,* 372 N.E.2d 804, 807-08 (Ohio 1978) (involving failure to lodge a contemporaneous objection for trial error); *see also Scott,* 209 F.3d at 866.  In presenting the due process claim alleged in Ground Two as an assignment of error on direct appeal, petitioner's appellate counsel should have been well-aware that it was necessary to also argue ineffective assistance of trial counsel and/or "plain error" to ensure that the underlying claim of constitutional error would not be foreclosed from review.

As discussed above, both the underlying due process claim and the ineffective assistance of trial counsel claim have merit.  The Ohio Court of Appeals relied on petitioner's procedural default at trial and did not address the concerns raised by *Valentine* or even whether plain error had occurred in overruling the assignment of error that was alleged by counsel.  Therefore, the failure of petitioner's appellate counsel to raise the ineffective assistance of trial counsel claim on direct appeal was both unreasonable and prejudicial under *Strickland*, and thus constituted ineffective assistance of counsel sufficient to establish "cause" for petitioner's procedural default of the ineffective assistance of trial counsel claim alleged in Ground Five and the due process claim alleged in Ground Two in the state courts.

The Court further finds that prejudice resulted from petitioner's procedural default in this case, and that petitioner is entitled to habeas relief based on the claim alleged in Ground Two.  Upon review of the indictment, bill of particulars and trial record, the undersigned is convinced that, as in *Valentine,* constitutional errors occurred in this case stemming from petitioner's prosecution and convictions in Case No. 2003-2143 on multiple, identically-worded, undifferentiated counts of sexual battery and rape.  As the prosecutor essentially admitted in closing argument, petitioner was prosecuted for a generic pattern of abuse based for the most part on the victim's numerical estimate of how often the abuse occurred, rather than for sixty separately identifiable instances of abuse.  The Sixth Circuit held in *Valentine* that, under federal law clearly established by the Supreme Court in *Russell*, such a practice violates a criminal defendant's rights under the Fourteenth Amendment's Due Process Clause to adequate notice of the charges and to protection against double jeopardy. *See Valentine,* 395 F.3d at 631-35.

However, as the Sixth Circuit further held in *Valentine,* issuance of an

39

unconditional writ of habeas corpus is inappropriate in this case given the substantial evidence that was presented of "ongoing abuse against which the petitioner had notice and opportunity to defend." *See id.* at 637.  Here, it appears from the record that the charges were sufficiently differentiated by the bill of particulars and evidence to the extent that petitioner could be separately convicted on the first count of sexual battery, cunnilingus (Count I); four counts of rape, digital penetration (Counts XI-XIV), based on separate incidents beginning when the victim was eight years old, which occurred at four different locations–Market Street and High Street in Aberdeen and Mt. Orab Pike and Eastland Mobile Home Park in Georgetown–during the specified period; three counts of rape, cunnilingus (Counts XLI-XLII), based on separate incidents beginning when the victim was ten years old, which occurred during the specified period at the High Street residence in Aberdeen, where the family moved in 2000, and the victim's subsequent homes at Mt. Orab Pike and Eastland Mobile Home Park; and the last count of rape (Count LX), based on the identifiable incident involving a "reddish pink colored dildo." (*See* Doc. 13, Ex. 10, Appendix, Bill of Particulars).

Petitioner was sentenced in Case No. 2003-2143 to consecutive prison terms on only five of the rape counts, with the remaining sentences to be served concurrently. (*See id.,* Exs. 5, 23).  As in *Valentine,* petitioner is entitled to relief to the extent that the inappropriate convictions must be vacated and petitioner resentenced accordingly.  *See Valentine,* 395 F.3d at 639; *cf. State v. Moore,* No. C-070421, 2008 WL 3544342, at *1 (Ohio Ct. App. 1 Dist. Aug. 15, 2008) (unpublished) (ruling that it constituted "prejudicial plain error" to impose even concurrent sentences for allied offenses of similar import because the defendant's criminal record still "would reflect two convictions when he had committed only one criminal act"), *appeal dismissed,* 900 N.E.2d 200 (Ohio 2009).  However, it is noted that because petitioner's convictions on one of the sexual battery counts and eight of the rape counts need not be disturbed, petitioner may be properly resentenced to the same aggregate term of imprisonment.

Accordingly, in sum, the Court concludes that, as alleged in Grounds Four and Five of the petition, petitioner's trial and appellate attorneys provided ineffective assistance sufficient to establish cause for petitioner's procedural default of the constitutional due process claim alleged in Ground Two challenging petitioner's prosecution, trial and conviction on multiple, undifferentiated counts of child sexual battery and rape in Case No. 2003-2143.  The procedural default also resulted in prejudice, because under the Sixth Circuit's decision in *Valentine,* which applies to the instant case, petitioner is entitled to relief on his underlying claim of constitutional

error alleged in Ground Two.  The writ of habeas corpus should be granted based on the claim alleged in Ground Two unless Ohio vacates the inappropriate multiple convictions, which were not adequately differentiated by the bill of particulars and evidence presented at trial, and resentences petitioner accordingly.

### E.  Petitioner Is Not Entitled To Relief Based On The Remaining Ineffective Assistance Of Appellate Counsel Claims Alleged In Grounds Four And Nine

Petitioner has alleged additional ineffective assistance of appellate counsel claims in Grounds Four and Nine of the petition.  Specifically, in Ground Four, petitioner contends that the attorney who represented him in the initial appeal "failed to raise any issues pertaining to the second indictment and conviction" in Case No. 2004-2008; petitioner also asserts in his "traverse" brief that a claim should have been raised on appeal challenging trial counsel's failure "to argue any issues surrounding the imposition of sentences which were enhanced beyond the statutory maximum" based on factors that were not found by a jury beyond a reasonable doubt or admitted by petitioner.  (Doc. 1, p. 11-A; Doc. 22, p. 10).  In Ground Nine, petitioner further alleges that the attorney who represented him on appeal from the trial court's resentencing decisions was ineffective for "failing to argue that the retroactive application of the *Foster* severance remedy violates the 'Separation of Powers Doctrine.'" (*Id.,* p. 11-E).  Petitioner is not entitled to relief based on any of these additional allegations.

As discussed earlier, to establish that his appellate attorneys were ineffective under the Sixth Amendment, petitioner must demonstrate that both (1) counsels' representation fell beow an objective standard of reasonableness; and (2) a "reasonable probability" exists that, but for the alleged errors by counsel, the appeal outcomes would have been different.  *See Strickland,* 466 U.S. at 687-89, 694-95.

In this case, the claim that an argument should have been raised in the initial appeal challenging trial counsel's failure to assert a Sixth Amendment *Blakely* objection at sentencing is moot.  Although such a claim was not presented to the Ohio Court of Appeals for consideration, the Ohio Supreme Court addressed the issue, which was raised as a proposition of law on further appeal by petitioner.  The state supreme court found merit to petitioner's claim and remanded the matter for resentencing pursuant to *Foster*.  Therefore, petitioner is unable to demonstrate that appellate counsel's omission prejudicially affected the outcome of the appeal as

required under the second prong of the *Strickland* test.

Second, petitioner has not demonstrated that his counsel in the initial appeal was ineffective in failing to allege any claims of reversible error stemming from his conviction and sentence in Case No. 2004-2008. Petitioner has not provided either this Court or the state courts with a factual or legal basis supporting this conclusory claim for relief. Petitioner "cannot show deficient performance or prejudice ... if [he] does not make some showing" regarding the claims that should have been raised and their likelihood of success on appeal. *Cf. Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002) (and cases cited therein) (involving a conclusory claim challenging trial counsel's failure to investigate), *cert. denied*, 539 U.S. 944 (2003). In the absence of such a showing, petitioner has not established that his appellate counsel's performance was deficient under the first prong of the *Strickland* test or that there is a "reasonable probability" that petitioner would have prevailed on appeal under the second prong of the *Strickland* test.

Finally, as the Ohio Court of Appeals reasonably concluded in denying petitioner's application for reopening of the appeal pertaining to the resentencing decisions, petitioner has not met his burden of "demonstrating a genuine issue as to whether he was denied the effective assistance of appellate counsel" in that matter. (*See* Doc. 13, Ex. 35). The "separation of powers" claim that petitioner contends should have been asserted as an assignment of error on appeal from the resentencing decisions is based on "arguments about the structure of a state's governance," which "are matters for the individual states, not the federal government." *See McKitrick v. Smith*, No. 3:08cv597, 2009 WL 1067321, at *3, *19 n.4 (N.D. Ohio Apr. 21, 2009) (unpublished); *see also Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (holding that such a claim involves an issue of state-law only, which is not subject to federal habeas review); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746, at *1, *13-18 (N.D. Ohio July 16, 2009) (unpublished) (holding that (1) "[t]hese allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus;" and (2) in any event, the state appellate court's determination "that severing the offending provisions of the sentencing statute was not a violation of the principle of the separation of powers" was neither "objectively unreasonable" nor "involved an unreasonable application of federal law").

Petitioner is unable to prevail on the claim that his counsel was constitutionally ineffective in failing to raise the state-law issue on appeal, because as the Ohio Court

of Appeals recognized in denying petitioner's reopening application (*see* Doc. 13, Ex. 35), the Ohio courts have uniformly held in numerous decisions that the *Foster* severance remedy does not violate the State's separation of powers doctrine. *See, e.g., State v. Barber,* No. 22929, 2010 WL 761298, at *2 (Ohio Ct. App. 2 Dist. Mar. 5, 2010) (and cases cited therein) (unpublished), *appeal dismissed,* 928 N.E.2d 739 (Ohio 2010); *State v. Archibald,* No. 2008-L-123, 2009 WL 3255308, at *2 (Ohio Ct. App. 11 Dist. Oct. 9, 2009) (and cases cited therein) (unpublished), *appeal dismissed,* 919 N.E.2d 216 (Ohio 2009); *State v. Kincaid,* No. L-08-1163, 2009 WL 1875237, at *4 (Ohio Ct. App. 6 Dist. June 30, 2009) (and case cited therein) (unpublished); *State v. Kelley,* No. 06CA008967, 2008 WL 834455, at *17 (Ohio Ct. App. 9 Dist. Mar. 31, 2008) (unpublished), *appeal dismissed,* 891 N.E.2d 772 (Ohio 2008); *State v. Hibbitt,* Nos. 89497 & 89885, 2008 WL 450377, at *2-3 (Ohio Ct. App. 8 Dist. Feb. 21, 2008) (unpublished); *State v. McKitrick,* No. 5-06-46, 2007 WL 2350989, at *7 (Ohio Ct. App. 3 Dist. Aug. 20, 2007) (and cases cited therein) (unpublished), *appeal dismissed,* 879 N.E.2d 784 (Ohio 2008); *State v. Palmer,* No. 06-JE-20, 2007 WL 969423, at *9 (Ohio Ct. App. 7 Dist. Mar. 27, 2007) (unpublished), *appeal dismissed,* 873 N.E.2d 1315 (Ohio 2007). Therefore, petitioner cannot demonstrate, as required under *Strickland*, that his appellate counsel's failure to raise such a claim was either unreasonable or prejudicially affected the outcome of the appeal. *Cf. Palmer v. Eberlin,* No. 2:08cv726, 2010 WL 518167, at *8, *19, *21-22 (S.D. Ohio Feb. 1, 2010) (Kemp, M.J.) (Report & Recommendation) (unpublished), *adopted,* 2010 WL 1882213 (S.D. Ohio May 11, 2010) (Frost, J.) (unpublished).

Accordingly, in sum, petitioner is not entitled to habeas relief based on his remaining ineffective assistance of appellate counsel claims alleged in Grounds Four and Nine of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice, except to the extent that relief should be **GRANTED** on petitioner's constitutional claim alleged in Ground Two of the petition, as well as the ineffective assistance of counsel claims alleged in Grounds Four and Five pertaining to and establishing "cause" for the procedural default of the claim alleged in Ground Two in the state courts. The writ of habeas corpus should be granted based on the underlying claim of constitutional error alleged in Ground Two unless, within ninety (90) days after the filing of any Order adopting this Report and

43

Recommendation, Ohio vacates the inappropriate multiple convictions, which were not adequately differentiated by the bill of particulars and evidence presented at trial, and resentences petitioner in accordance with the above opinion, *see supra* pp. 40-41.

2.  A certificate of appealability should not issue with respect to the claims alleged in Grounds One, Three, Four, and Six through Nine of the petition, which this Court has concluded should be denied with prejudice, because none of those claims for relief state a "viable claim of the denial of a constitutional right" or present issues that are "adequate to deserve encouragement to proceed further." *See Slack* , 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis* from any Order adopting the undersigned's Report and Recommendation to deny habeas corpus relief on claims alleged in Grounds One, Three, Four and Six through Nine of the petition, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of such Order would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: <u>November 12, 2010</u>    <u>s/ J. Gregory Wehrman</u>
      cbc                          J. Gregory Wehrman
                                  United States Magistrate Judge

C:\Documents and Settings\tammy\Local Settings\Temp\notes097731\~1927417.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

James L. Bennett,
    Petitioner

      vs                            Case No. 1:09cv622
                                      (Bertelsman, J.; Wehrman, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).